471 So.2d 690 (1985)
Betty T. BURGESS
v.
CITY OF SHREVEPORT, et al.
Nos. 84-C-0784, 84-C-0827.
Supreme Court of Louisiana.
June 17, 1985.
Rehearings Denied September 9, 1985.
*691 Sydney B. Nelson, Nelson, Hammons & Johnson, Shreveport, for applicant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Charles E. Welsh, Asst. Atty. Gen., Jerald L. Perlman, J. Jay Caraway, Blanchard, Walker, O'Quin & Roberts, Larkin E. Greer, W. Glen Mangham, Shreveport, for respondents.
DENNIS, Justice.
The question presented by this wrongful death and survival action is whether a police jury in discharging its statutory obligation to establish a polling place in a suitable building having proper facilities owes a duty to voters to inspect the premises for forseeably dangerous conditions and take reasonable precautions to protect them from dangers which are reasonably discoverable. The lower courts exonerated the police jury from liability to the survivors of an 86-year old voter who fell and was fatally injured on a defectively arranged step, holding that the jury was under no duty to inspect the premises and take precautions against reasonably discoverable dangers. We reverse. A police jury is required to establish a polling place for each precinct in a "suitable ... building * * * having proper facilities." In view of constitutional and statutory standards regarding citizens' rights of voting and access to public facilities, a suitable polling place having proper facilities must be reasonably safe, accessible, and convenient to voters, including the aged and handicapped. Consequently, before establishing a polling place, a police jury is obliged to inspect the premises for any condition foreseeably presenting an unreasonable risk of harm to voters and to exercise reasonable care to protect voters from such dangers that are reasonably discoverable.
Betty T. Burgess, age 86, fell from a step at a polling place in a Shreveport fire station where she had gone to vote in an election on December 8, 1979. She died on *692 March 21, 1981 as the result of her injuries and further complications. Mrs. Burgess's daughter, Elizabeth Burgess Maffett, was substituted as plaintiff in this suit originally filed by Mrs. Burgess.
The Caddo Parish Police Jury designated the fire station as a polling place for the election. The jury had designated the station for elections regularly for about 34 years. The jury did not inspect the premises to determine whether they were suitable as a polling place before the election.
On the December day Mrs. Burgess fell, the large garage doors of the fire station's engine room containing the voting booths were closed because of cold weather. Voters were invited to enter the fire station through the adjoining living quarters and enter the engine room through an inner doorway. Because the engine room floor was lower than the living quarters, voters had to pass through the inner doorway and descend a six inch step located just inside the engine room. The evidence tended to show that the lighting at this place was inadequate and that the floors of the two rooms appeared to be level because they were painted the same hue. There was no warning sign or hand rail. Although an entrance at the back of the engine room on the same level was available, voters were not directed to this safer alternative.
Mrs. Burgess fell attempting to traverse the inner doorway and step into the engine room. The trial court found that the arrangement of the step and other circumstances presented an unreasonable risk of harm to voters, that the city and the state were joint custodians of the premises during the election, that the city firemen and state election commissioners were guilty of negligence in not warning, assisting or guiding Mrs. Burgess with respect to the dangerous step, that the defective premises and the negligence of these persons concurrently caused the accident, and that Mrs. Burgess was not contributorily negligent. Accordingly, the trial court concluded that the city and state were solidarily liable for the damages resulting from the accident both as custodians of the defective thing and as employers of the negligent employees.
The trial court held that the Caddo Parish police jury was not responsible for the accident because, first, it owed no duty to use reasonable care to protect voters by inspecting the premises for defects such as the unreasonably dangerous step arrangement and, second, the jury was not a custodian of the defective premises. Because the City of Shreveport had settled with plaintiffs and had obtained a release prior to trial, the trial court rendered judgment against the state only for one-half of the damages resulting from the accident. The court of appeal affirmed tacitly approving the trial court holdings. We granted writs to review primarily the decisions as to the police jury's liability and the size of the judgment.
We have reviewed the record and conclude that the trial court's decision as to the liability of the city and the state was not manifestly erroneous or incorrectly affirmed. The trial court's decision that the police jury was not legally responsible, however, was based upon an erroneous view of the law as to the governing authority's duty to inspect a site before designating it as a polling place. Because this error alone requires a reversal of the previous courts' decisions, it is not necessary for us to consider the question of whether the police jury may be regarded as a custodian of a polling place during an election. The awards for pain and suffering and wrongful death are inadequate and will be increased to the lowest reasonable amounts.
The statutory scheme governing the administration of elections imposes complementary duties upon state and local governments. The parish governing authority has a duty to establish polling places by selecting and designating a location within each precinct. La.R.S. 18:533. The state election commissioners are responsible for conducting elections at each polling place, enforcing the election laws, and maintaining order at the polling place during the election. La.R.S. 18:425(C). Under a statute enacted after the accident *693 in this case, all public bodies are expressly required to allow the use of public buildings as voting precincts without cost or charge when the parish governing authority requires it. La.R.S. 18:533(B)(1) (Supp. 1984).
As part of its election function, the parish governing authority is obliged to establish one polling place for each precinct and to locate it in a "suitable public building, or, if none is available, then on private property." La.R.S. 18:533(A), (B)(1). If a building having "proper facilities" cannot be found, a location within the nearest precinct having a suitable building may be selected. La.R.S. 18:533(B)(2). Accordingly, the police jury has a duty to establish a polling place in a suitable building having proper facilities and to refrain from locating a polling place in any site lacking in these criteria.
The constitutional and statutory provisions relative to voting and access to public facilities indicate the basic requisites of a "suitable" polling place "having proper facilities". Every citizen eighteen years of age has the right to register and vote, unless he has been declared incompetent or convicted of a felony. La. Const. art. 1 § 10. He also has the right to access to public facilities free from arbitrary, capricious or unreasonable discrimination based on age or physical condition. Id. art. 1 § 12. It is the legislatively declared policy of this state to enable physically handicapped persons to use and enjoy all buildings and facilities. La.R.S. 40:1731. Consequently, a police jury is required to exercise reasonable care in establishing a polling place to locate it in a building which affords each qualified voter an opportunity to exercise his right of voting and access with reasonable safety and convenience free from unreasonable, arbitrary or capricious discrimination based on age or physical condition.
A police jury's duty to exercise reasonable care in establishing a public voting place, therefore, necessarily includes a responsibility to inspect the building to see if it is reasonably safe for use by all classes of voters. This obligation is not unduly burdensome, as it requires no more than an intelligent visual inspection for reasonably discoverable and foreseeable dangers presenting an unreasonable risk of harm to voters. A police jury is not required to search for hidden defects or any condition which is not reasonably discoverable or which does not present an unreasonable risk of foreseeable harm. Upon discovering an unreasonably dangerous condition, however, a jury has a duty to either select another site or exercise reasonable care to protect all classes of voters from the hazard. This duty may be performed by a jury by requesting repairs or changes in the building, designating parts of the building off limits, posting warning signs, providing hand rails, or other alternatives.
In the absence of such a duty by the police jury in selecting a polling place no one would have the responsibility to see that a reasonably safe place for voters is selected. It is likely that polling places would be established in unsafe locations, which would place an undue or impossible burden upon the election commissioners to protect the voters from dangerous conditions during elections.
Applying the precepts to the present case, we conclude that the police jury breached its duty to Mrs. Burgess and other voters to conduct a reasonable inspection of the premises for conditions presenting unreasonable risks of harm to them. Such an inspection easily would have determined that a likely route to the voting machines was unreasonably dangerous, particularly to aged and handicapped voters. Had the police jury inspected the premises and further carried out its duty to exercise reasonable care to protect voters from the hazard, the accident would not have occurred. Therefore, the breach of the jury's duty to inspect was a cause of the accident, this duty encompassed the risk of injury to a voter falling on the defective step, and the jury is liable for the damage caused by its negligence.
*694 The trial court awarded damages of $75,000 for the pain and suffering experienced by Mrs. Burgess, $15,000 to her daughter, Mrs. Maffett, for the wrongful death of her mother, and $52,615.73 for medical expenses. The award was reduced by one half because of the release of the City of Shreveport. The court of appeal affirmed the judgment of the trial court. The plaintiff complains that the awards were partially inadequate and should be increased to $200,000 for Mrs. Burgess's pain and suffering and $25,000 for her wrongful death. We agree and will amend the judgment accordingly.
Following the accident, Mrs. Burgess was taken by ambulance to the P & S Hospital where she underwent surgery for a fracture of her left forearm. During surgery under general anesthesia, the femural head was removed and an Austin Moore prosthesis was installed. This prosthesis consisted of a metal ball which fits into the hip socket and is attached to the femural bone. The third day after surgery, Mrs. Burgess suffered a pulmonary embolus, a blood clot, as a complication of surgery. She remained critically ill and in considerable pain for weeks. She was released from the hospital on January 21, 1980, and taken to a nursing home. Four (4) days later she was readmitted to the hospital's intensive care unit, in critical condition with pain in her chest and shortness of breath which was thought to have been another blood clot which had moved to her lung from her leg. She did not do well and Dr. Rod Yeager was consulted for the purpose of ligation of the vena cava, which involves sealing or clamping off the large vein in the abdomen to prevent more clots from coming to the heart from the legs. Mrs. Burgess was placed on blood thinner. She continued not to feel well, was weak and nauseated, developed a skin rash on her back, and became depressed. She nearly died on March 10, 1981, and it was necessary to use a defibrillator with an electric shock to revive her. She suffered a cracked rib as a result of this procedure, and she developed repeated urinary tract infections during her treatment.
Before the accident, Mrs. Burgess was an active, independent lady in good health who lived alone and cared for herself. She did her own shopping, attended Sunday school regularly, and participated in various church socials and other activities. She never recovered from the injuries she sustained on December 8, 1979. Her daughter attempted to care for her at home for a short period of time but Mrs. Burgess had to be re-hospitalized and on her last release from the hospital, she was placed in a nursing home. Betty Burgess remained mentally alert but her health deteriorated until she died on March 21, 1981.
The death of Mrs. Burgess was hastened by the accident. A chain of events was triggered by the accident which led to her death. The cause of death for Mrs. Burgess was a stroke, but her pain, suffering, strain and tension contributed to her stroke. During the eleven months she was in the nursing home, Mrs. Burgess's health never improved enough that she could return to living alone.
Medical bills incurred as a result of the accidental injuries to Betty T. Burgess were as follows:

P & S Hospital
(12/8/79-1/21/80) $ 13,737.19
P & S Hospital
(1/24/80-3/2/80) 13,687.35
Orthopedic Clinic 1,225.00
Prudhomme's Paramedical
Register, Inc. 1,428.00
Urology Clinic 50.00
Dr. Rod M. Yeager 900.00
Drs. Hall, Woods, Treagle &
Cassiere 3,230.00
Nurse Care of Shreveport 326.87
P & S Hospital
(3/9/80-4/16/80) 8,180.30
Pierremont Heritage Manor
Nursing Home 8,900.92
Pierremont Heritage Manor
Nursing Home 150.00
Lewis Pharmacy 704.70
Pathology Lab 55.40
Douglas H. Freer, D.P.M. 40.00
 ___________
 TOTAL MEDICAL
EXPENSES $ 52,615.73

Mrs. Burgess suffered from the date of her accident on December 8, 1979, until the *695 date of her death on March 21, 1981, or a total of fifteen months and thirteen days. From time to time Mrs. Burgess suffered what one of her doctors characterized as inordinate pain and physical discomfort.
Elizabeth Burgess Maffett and her mother, Betty Burgess, had a very warm and good relationship. They talked on the telephone every day while they were both living in Shreveport. During the time that Elizabeth Maffett and her husband lived away from Shreveport, Betty Burgess visited them extensively, spending one to two months with them each year. Elizabeth Maffett visited her mother in the nursing home every day. Mrs. Maffett's husband died after Mrs. Burgess's accident but before her death. The loss of her mother after having lost her husband was an especially hard blow to Mrs. Maffett.
From our review of the record chronicling Mrs. Burgess's accident, trauma, lingering illness, and death, as well as our examination of other somewhat similar cases, we conclude that the lowest reasonable amount that should be awarded for her pain and suffering is $200,000, see Anding v. Southwestern Ins. Co., 358 So.2d 699 (La.App.3d Cir.1978), and for her wrongful death is $25,000. See McKenzie v. Nationwide Mut. Ins. Co., 363 So.2d 1340 (La.App.3d Cir.1978); Fowler v. Western Union Telephone Co., 357 So.2d 1305 (La.App.3d Cir.1978); Ardoin v. Hartford Acc. & Indem. Co., 350 So.2d 205 (La. App.3d Cir.1977), reversed on other grounds, 360 So.2d 1331 (La.1978).

Conclusion
Let the judgments of the trial and appeals courts be amended to award judgment in favor of plaintiff and against the State of Louisiana and the Caddo Parish Police Jury, in solido, subject to a credit of one third because of the release by the plaintiff of the City of Shreveport, in the following amounts together with legal interest thereon from date of judicial demand until paid:

Pain and suffering of Betty T.
Burgess $200,000
Wrongful death of Betty T.
Burgess 25,000
Medical Expenses of Betty T.
Burgess 52,615.73
 ___________
TOTAL $277,615.73

Costs of these proceedings in all courts are assessed against the State of Louisiana and the Caddo Parish Police Jury.
AMENDED AND AFFIRMED.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
BLANCHE, Justice (dissenting).
I respectfully dissent. Under La.R.S. 18:533, the Police Jury had a duty to select a polling place in a suitable public building. This duty includes selecting a building with a proper location for the precinct and one that is easily accessible to the public, including elderly and handicapped persons. This duty would also include an inspection of the building for obvious and apparent defects, but does not include a search for defects which are not readily apparent or easily discoverable. The Court of Appeal found that once the Commissioners observed the hazardous condition they had a duty to correct the situation. Therefore the defect, if one was in fact present, was not a defect which was readily apparent to the Police Jury. The Police Jury therefore satisfied its duty to select a suitable polling place that was free from apparent defects. Moreover, while the plaintiff's injuries were related to the accident, the award of the trial court was not manifestly erroneous and should not have been increased.
MARCUS, Justice (dissenting).
Under the facts of this case, I do not consider either the state election commissioners or the parish police jury is liable for the damages sustained. Rather, I consider the sole cause of the accident and resulting damages was the defect in the building owned by the city. The city settled and was released from the lawsuit prior to trial. Accordingly, I do not reach the issue of quantum. I respectfully dissent.