543 So.2d 1348 (1989)
Louis Vester ARCHIE, Bennie Louis Archie, Leatha Archie Fields, and Versie Archie Henry
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY and Agricultural and Mechanical College.
No. 87 CA 1189.
Court of Appeal of Louisiana, First Circuit.
January 19, 1989.
Concurring in Part and Dissenting in Part February 1, 1989.
*1349 Paul H. Dué, Baton Rouge, for plaintiff-appellant, Louis Vester Archie, et al.
A. Mills McCawley, Shreveport, for defendant-appellee, Bd. of Supervisors of *1350 Louisiana State University and Agr. and Mechanical College.
Before WATKINS, CARTER, LANIER, CRAIN and LeBLANC, JJ.
Concurring in Part and Dissenting in Part by Justice Lanier February 1, 1989.
CARTER, Judge.
This is a suit for damages for wrongful death.

FACTS
During the early morning hours of January 24, 1984, the decedent, Luada Goldsby Archie, experienced chest pains and shortness of breath. Thereafter, she was examined by Dr. A. C. Wadlington in his office in Farmerville, Louisiana. Dr. Wadlington obtained an electrocardiogram (EKG) on the decedent, which he determined to be abnormal. Dr. Wadlington suspected that the decedent's symptoms were cardiac in origin and recommended immediate hospitalization.
Despite the availability of three nearby hospital facilities, the decedent insisted that she be hospitalized at the LSU Medical Center in Shreveport. Decedent was taken to the LSU Medical Center by private automobile and arrived in the emergency room at approximately 8:15 p.m. on January 24, 1984. At that time, decedent was evaluated by an emergency room physician. Decedent had a history of high blood pressure and had suffered chest pains for a five-hour period. The chest pains were characterized as being exertional, beginning in the left lower jaw and radiating across the left chest and associated with shortness of breath and nausea. Decedent's pain was relieved after administration of three sublingual nitroglycerins, and her physical examination indicated that she had a low grade murmur. Laboratory tests, EKG, and chest x-ray were ordered. Pain medication was prescribed which produced some relief for her discomfort.
The laboratory tests and EKG were interpreted and indicated the need for medical consult, which was provided by an internal medicine resident. The resident examined decedent after approximately twelve (12) hours of observation in the emergency room and described her chest pain as being "atypical." He also interpreted her EKG as normal and determined that the laboratory tests were also within normal limits. Decedent was diagnosed with esophagitis (inflammation of the esophagus) and was sent home on treatment with antacids.
Decedent followed the physician's instructions and returned home with her family, continuing to complain of chest discomfort and shortness of breath. She died at approximately 3:30 p.m. on January 25, 1984, on the porch of her home only a few hours after her discharge from LSU Medical Center.
On January 4, 1985, plaintiffs, decedent's husband (Louis Vester Archie) and her three major children (Bennie Louis Archie, Leatha Archie Fields, and Versie Archie Henry), filed a wrongful death and survival action against the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (Board). The Board filed a third party demand against Dr. A. C. Wadlington, which was dismissed by judgment dated March 30, 1987.
At trial, the Board stipulated liability, and the matter proceeded only on the issue of quantum. After trial, the trial judge awarded plaintiffs $15,000.00 in survival action damages and wrongful death damages as follows:

(1) Louis Vester Archie $70,000.00
(2) Bennie Louis Archie $30,000.00
(3) Leatha Archie Fields $28,000.00
(4) Versie Archie Henry $28,000.00

From the judgments awarding damages,[1] plaintiffs appeal, assigning the following errors:

*1351 I. The trial judge erred in casting certain aspersions upon the marital relationship between plaintiff, Louis Vester Archie, and his late wife, thus warranting a res nova determination of the appropriate award of general damages.
II. Alternatively, the trial judge erred in awarding inadequate general damages to the surviving husband.
III. The trial judge erred in awarding inadequate general damages for each of the three surviving children.
IV. The trial judge erred in failing to include in the judgments any award for the stipulated funeral expenses.
V. The trial court erred in inadvertently failing to award plaintiffs the medical expenses incident to the wrongful death at Union General Hospital.
VI. The trial judge erred in not awarding certain proven expenses as court costs.

STANDARD OF REVIEW
We have a constitutional duty to review the law and facts and render a judgment on quantum based on the merits, determining whether the trier of fact abused its "much discretion" that the law accords it in awarding damages. LSA-Const. art. 5, § 10(B); LSA-C.C. art. 1934(3), now LSA-C.C. art. 1999; Ard v. Samedan Oil Corporation, 483 So.2d 925 (La.1986); Carollo v. Wilson, 353 So.2d 249 (La.1977); Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976); Sexton v. Louisiana Vacuum Services, Inc., 506 So. 2d 780 (La.App. 1st Cir.1987).
Before an appellate court can disturb an award by a trial court, the record must clearly reflect that the trier of fact abused its discretion in making its award. In the event the appellate court finds from the record an abuse of discretion, the award may be disturbed by lowering (or raising) it to the highest (or lowest) point which is reasonably within the discretion afforded the trier of fact. Ard v. Samedan Oil Corporation, supra; Reck v. Stevens, 373 So.2d 498 (La.1979); Carollo v. Wilson, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Sexton v. Louisiana Vacuum Services, Inc., supra.
Plaintiffs contend that, in assessing quantum, the trial judge casted aspersions upon the marital relationship between plaintiff Louis Vester Archie and the decedent, thus warranting a res nova determination of the general damage award. In support of this contention, plaintiffs rely on Mart v. Hill, 505 So.2d 1120 (La.1987).
In Mart v. Hill, supra, the Louisiana Supreme Court determined that the trial judge erroneously determined that plaintiff's injuries were not caused by the accident. The court further stated:
[T]his finding was clearly wrong and resulted in a monetary award which incorrectly did not take into account the nature of plaintiff's injuries and the extent of his disability. The principles espoused in Coco do not apply in this case, since there was no award made for consequences of the accident past January, 1982, for the appellate court to review. Simply stated, Coco applies when an appellate court is asked to correct a fact finder's abuse of discretion in assessing the appropriate monetary award for a given injury. The principles are not applicable when a res nova review of quantum must be made to compensate a plaintiff for damages which the trial court did not believe were causally related to the accident. See, Jackson v. United States Fidelity and Guaranty Company, 382 So.2d 223, 230 (La.App. 3d Cir.), writ denied, 385 So.2d 275 (La. 1980); Cf., Rodriguez v. Traylor, 481 So.2d 1017 (La.1986). [505 So.2d at 1128] (emphasis added)
Similarly in Rodriguez v. Traylor, 481 So.2d 1017 (La.1986), the Louisiana Supreme Court held that when the jury has been erroneously instructed on the issue of quantum of damages so that it is necessary for a reviewing court to set aside the award, the amount of damages fixed by the *1352 jury should be entirely disregarded. The appellate court, under its authority to review facts, should fix the damages on the basis of an independent evaluation of the record, rather than simply increasing to the lowest reasonable amount. See also Suhor v. Gusse, 388 So.2d 755 (La.1980).
Both Mart v. Hill, supra and Rodriguez v. Traylor, supra are clearly distinguishable from the instant case. In Mart v. Hill, supra, the trial judge committed a legal error in failing to award plaintiff damages for an injury he determined was not legally caused by the accident. This legal error interdicted the trial judge's quantum award requiring a res nova determination of damages. Likewise, in Rodriguez v. Traylor, supra, the trial judge committed legal error in improperly instructing the jury on damages. This legal error required the reviewing court to set aside the jury verdict and to award damages based upon an independent evaluation of the record.
In the instant case, plaintiffs do not contend that the trial judge committed a legal error in assessing quantum. Rather, plaintiffs contend that a misstatement of fact, which was later corrected, interdicts the trial judge's award of quantum and requires a res nova determination of damages. We disagree. The trial judge, in the written reasons for judgment, made a misstatement of fact as to whether plaintiff Louis Vester Archie accompanied his wife to Shreveport.[2] The trial judge later acknowledged this misstatement and clarified his position in the "Clarification of Written Reasons."[3] However, the written reasons for judgment clearly reflect that the trial judge, in awarding quantum, determined that plaintiffs did not demonstrate an unusually close relationship and that Louis Vester Archie's failure to accompany his wife after her discharge from the hospital illustrated this lack of extreme closeness.
Considering all of the above factors, we find that the trial judge made no legal error in assessing quantum and took into account all relevant facts regarding plaintiffs' damages. Our review of the quantum award is therefore governed by the principles set forth in Coco v. Winston Industries, Inc., supra. Accordingly, in the instant case, we must first examine the record to determine whether it reveals that the trial court abused its discretion in its awards to plaintiffs. If we find an abuse of discretion, the awards should be reduced to the maximum amounts or increased to the minimum amounts which are reasonably within the discretion of the trial court.

QUANTUM[4]
LSA-C.C. art. 2315.2 gives the surviving spouse and children of the deceased a right to recover the damages they suffered as a result of the wrongful death. At the time of her death, Luada Archie was fifty-eight years old. She and plaintiff Louis Vester Archie were married on December 17, 1946. The Archies had three children, Leatha, born October 4, 1947, Versie, born December 11, 1948, and Bennie, born December 18, 1952.
Prior to her death, the decedent performed all of the household chores at home, including cooking all of the family's meals, performing all of the housecleaning, and washing and ironing the laundry. In addition, she assisted feeding and raising the animals on the family farm, including some forty to fifty hogs and several flocks *1353 of chickens. It is undisputed that the Archie's marriage was a close and loving one.
Although the children were grown and had moved away from home, the decedent managed to maintain a close and supportive relationship with each of them, which was stipulated by the defendants. Each of the children testified at trial regarding the losses suffered as a result of their mother's wrongful death.
Bennie L. Archie testified that he left home after graduation from high school and attended Northeastern University in Monroe. While in college, Bennie returned home almost every weekend to be with his mother. In 1974, Bennie graduated from college and married. He and his wife moved to Monroe; however, Bennie obtained a job teaching in Farmerville near his mother's home and visited her often. Thereafter, Bennie moved to Baton Rouge, but managed to visit his mother twenty-four times a year and spoke with her by telephone on a weekly basis. Up until the time his mother died, Bennie had always spent every Christmas with his mother. Bennie testified that he and his mother were very close, that he had always confided in her, and that she had always been there to help him.
Versie Archie Henry testified that she moved to Monroe shortly after graduation in 1966. She married in 1967, and she and her husband visited her mother at least every other weekend. In 1969, Versie and her husband moved to Houston, Texas, where they continued to reside. Versie visited her mother three times a year and regularly spoke with her by telephone. Upon learning of her mother's chest pains and hospitalization, Versie left Houston to be with her mother. Versie was at her mother's side when she died.
Leatha Archie Fields testified that upon graduating from high school in 1965, she attended Grambling University, which was only sixty-five miles from home. Leatha saw her mother on weekends and during school breaks. After she moved to Illinois in 1969, Leatha saw her mother twice a yearduring summer vacation and at Christmas. Her mother also visited her in Illinois on several occasions. Leatha spoke with her mother by telephone approximately twice a week. Although Leatha attempted to be with her mother for Christmas of 1983, bad weather conditions forced her to return to Illinois. Leatha, however, was able to attend her mother's funeral.
Under Louisiana law, amounts recoverable in a wrongful death action for loss of care, guidance, and affection of the deceased may differ among the plaintiffs on the basis of differing degrees of affection which existed between the deceased and the different plaintiffs or differing degrees of guidance needed by minor plaintiffs. See Mergen v. Piper Aircraft Corp., 524 So.2d 1348 (La.App. 1st Cir.1988).
Based upon the facts outlined above, we find that the trial court abused its great discretion in this case by not awarding an amount of general damages consistent with the testimony at trial. The lowest award for wrongful death damages supported by plaintiffs' testimony, which is uncontradicted, is as follows:

(1) Louis Vester Archie $150,000.00
(2) Bennie Louis Archie 45,000.00
(3) Leatha Archie Fields 45,000.00
(4) Versie Archie Henry 45,000.00

FUNERAL EXPENSES AND MEDICAL EXPENSES
Plaintiffs contend that the trial judge erred in failing to award damages for various medical expenses and funeral expenses. Plaintiffs reason that the bills for these expenses were introduced into evidence at trial and were stipulated expenses and, therefore, it was error for the trial judge not to award plaintiffs damages for these amounts.
A. FUNERAL EXPENSES
The elements of damage to be recovered in a wrongful death action are loss of love, affection, and companionship, loss of support, and funeral expenses. McQuarters v. Zegar, 466 So.2d 579 (La. App. 5th Cir.1985).
In the instant case, it is undisputed that plaintiff paid funeral expenses totalling $3,393.25. Clearly, the trial judge *1354 erred in failing to award plaintiffs damages of $3,393.25 for funeral expenses.
B. MEDICAL EXPENSES
Plaintiffs introduced evidence of medical expenses totalling $101.50 for treatment the decedent received in the emergency room at Union General Hospital. The trial judge failed to award plaintiffs damages for these expenses, which were stipulated at trial. Such failure was error.

COSTS
Plaintiffs contend that the trial judge erred in failing to award, as costs, certain expenses for medical reports and hospital records.
LSA-R.S. 13:3666(C) provides as follows:
In either manner provided in Subsection B, the court shall also determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports and copies of hospital records.
Under LSA-R.S. 13:3666(C), the court shall determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports. See Simmons v. State, Louisiana Health and Human Resources Administration, 502 So.2d 187 (La.App. 3rd Cir.1987).
In the instant case, plaintiffs incurred expenses of $75.00 for obtaining a medical report from Dr. A. C. Wadlington and $11.00 for a copy of the hospital records from the Louisiana State University Medical Center. The Board does not contest these expenses and costs. Plaintiffs have proven and are entitled to recover these costs, and the trial court erred in failing to award them. Bridgewater v. Crown Zellerbach, 449 So.2d 515 (La.App. 1st Cir.1984).

CONCLUSION
For the above reasons, the judgment of the trial court awarding wrongful death damages[5] is amended as follows:

(1) Louis Vester Archie $150,000.00
(2) Bennie Louis Archie 45,000.00
(3) Leatha Archie Fields 45,000.00
(4) Versie Archie Fields 45,000.00

Further, the trial court judgment is amended to award plaintiffs funeral expenses of $3,393.25 and medical expenses of $101.50. Additionally, expenses totalling $86.00 for medical reports and hospital records are assessed as costs. In all other respects, the judgment of the trial court is affirmed. Defendant is cast for costs on appeal.
AMENDED AND AFFIRMED.
LeBLANC, Judge, dissenting in part.
I respectully dissent from that portion of the majority opinion increasing the awards for loss of love and affection to plaintiffs, Bennie Louis Archie, Leatha Archie Fields and Versie Archie Henry, from $30,000.00, $28,000.00 and $28,000.00, respectively, to $45,000.00 each. I do not believe that the amounts awarded by the trial court were an abuse of its much discretion.
LANIER, Judge, concurring in part and dissenting in part.
I dissent from those portions of the majority opinion which (1) hold the trial court abused its discretion in fixing the wrongful death awards for the major children at $28,000 and $30,000 and (2) determine that the minimum amount which reasonably can be given for such awards are $45,000 each. In all other respects, I concur in the majority opinion.
The pertinent law applicable to this issue is set forth in Reck v. Stevens, 373 So.2d 498, 500-501 (La.1979), as follows:
We elaborated on the methodology of appellate review of awards for general damages in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). We there stated, 341 So.2d 335-36 (Italics supplied and citations omitted):
"We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the *1355 record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
....
Thus, the initial inquiry must always be directed at whether the trier [sic] court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La. 1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries, see Coco at 341 So.2d 334. [Bolding added.]
[Footnote omitted.]
The majority opinion fails to follow the methodology prescribed in Reck v. Stevens because (1) it does not articulate reasons to show why it finds the trial court abused its discretion in fixing these awards, (2) it does not consider the mass[1] of similar prior wrongful death awards for the limited purpose of determining whether the trial court's awards are "greatly disproportionate" to these past awards, and (3) it does not consider the mass of similar prior wrongful death awards to determine what would be an appropriate award in the instant case. Because the majority has failed to follow the proper methodology in deciding this issue, it has fixed minimum wrongful death awards which are "greatly disproportionate" to those fixed by the Louisiana Supreme Court and the other courts of appeal in similar cases, and equal justice under the law has not been served.
In Burgess v. City of Shreveport, 471 So.2d 690 (La.1985), an 86 year old voter fell and was fatally injured on a defectively arranged step in a polling place. Her adult daughter was awarded $15,000 for her wrongful death in the trial court, and this award was affirmed on appeal. In a writ to the Louisiana Supreme Court, the daughter asserted the $15,000 award was inadequate and sought an increase. The Louisiana Supreme Court increased the award to $25,000 with the following rationale:
Elizabeth Burgess Maffett and her mother, Betty Burgess, had a very warm and good relationship. They talked on the telephone every day while they were both living in Shreveport. During the time that Elizabeth Maffett and her husband lived away from Shreveport, Betty Burgess visited them extensively, spending one to two months with them each year. Elizabeth Maffett visited her mother in the nursing home every day. Mrs. Maffett's husband died after Mrs. Burgess's accident but before *1356 her death. The loss of her mother after having lost her husband was an especially hard blow to Mrs. Maffett.
From our review of the record chronicling Mrs. Burgess's accident, trauma, lingering illness, and death, as well as our examination of other somewhat similar cases, we conclude that the lowest reasonable amount that should be awarded for her pain and suffering is $200,000, see Anding v. Southwestern Ins. Co., 358 So.2d 699 (La.App.3d Cir. 1978), and for her wrongful death is $25,000. See McKenzie v. Nationwide Mut. Ins. Co., 363 So.2d 1340 (La.App.3d Cir.1978); Fowler v. Western Union Telephone Co., 357 So.2d 1305 (La. App.3d Cir.1978); Ardoin v. Hartford Acc. & Indem. Co., 350 So.2d 205 (La. App.3d Cir.1977), reversed on other grounds, 360 So.2d 1331 (La.1978).
[Burgess, 471 So.2d at 695.]
[Bolding added.]
See, also, Johnson v. State, 450 So.2d 386 (La.App. 1st Cir.), writ denied, 450 So.2d 1311 (La.1984).
In Raymond through Raymond v. Deaton, 423 So.2d 724 (La.App. 1st Cir.1982), the father of two minor children was killed in a vehicular collision. Each of the children was awarded $25,000 for wrongful death in the trial court. The children answered the defendant's appeal and asserted these awards were inadequate. This court affirmed these awards with the following rationale:
Awards for damages lie within the "much discretion of the trier of fact and are not to be disturbed on appeal unless there is a manifest abuse of the discretion." Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Twenty-five thousand dollars ($25,000.00) to each of the children for the loss of love and affection of their father is on the low side, but we cannot say that it is so low as to constitute an abuse of discretion.
Looking to awards in similar cases, we find that an award of $40,000.00 to each child for general damages has been upheld as fair. Faulk v. Schlumberger Well Services, 412 So.2d 162 (La.App. 3d Cir.1982).
In LeJeune v. Allstate Ins. Co., 373 So.2d 212 (La.App. 3d Cir.1979), the court awarded $12,500.00 to a nine year old son for the loss of love and affection of his father. On appeal the court found the award to be inadequate and increased the award to $30,000.00 because of the happy close knit family relationship that existed prior to the father's death.
In another wrongful death action, an award of $7,500.00 to the decedent's wife for loss of love and affection was held to be adequate. Davis v. Owen, 368 So.2d 1052 (La.1979).
We recognize the principle that awards in similar cases of this nature do not provide a scale of uniform awards in cases involving comparable injuries. Such awards serve only as aids in determining whether a particular award is so greatly disproportionate to awards for similar injuries that a manifest abuse of discretion is evident. Temple v. Liberty Mutual Insurance Co., 336 So.2d 299 (La.App. 1st Cir.1976), writ refused 339 So.2d 23 (La.1976).
An award of $25,000.00 is not so greatly disproportionate as to other awards for wrongful death that a manifest abuse of discretion is evident. We find that the jury was within the scope of discretion accorded by law and therefore we affirm the amount awarded by the jury.
[Deaton, 423 So.2d at 729.]
[Bolding added.]
See, also, Cheramie v. Brunet, 510 So.2d 700 (La.App. 1st Cir.), writs denied, 513 So.2d 1209 and 1215 (La.1987).
Finally, in Arnold v. Illinois Central Gulf Railroad, 501 So.2d 778 (La.App. 1st Cir.1986), writ denied, 503 So.2d 479 (La. 1987), a case similar to the instant case, the mother of two major children was killed in a train-automobile collision. The trial court dismissed the suit by finding no liability. This court reversed and found the defendant liable. This court then fixed de novo wrongful death damage awards for the two major children with the following rationale:

*1357 DAMAGES
Mrs. Arnold was approximately fifty-seven years of age at the time she was killed. She had been married to her husband without legal or physical separation since 1941. She was survived by two children, both of whom were majors. The family was extremely fond of one another. We find an award of $50,000.00 to the husband, and $25,000.00 to each of the two major children, David Arnold and Eva Arnold, to be called for.
[Arnold, 501 So.2d at 780.]
[Bolding added.]
In the instant case and in the Arnold case, the parent and the children were "extremely fond of one another." Arnold was not a Reck v. Stevens review to fix the minimum amount; it was a de novo exercise of discretion. Arnold was decided by this court on November 19, 1986. The trial court herein rendered its de novo judgment on quantum on May 22, 1987, about six months after Arnold. If Arnold is a reasonable de novo fixing of wrongful death damages at $25,000 in November of 1986, how can the wrongful death damage awards fixed in the instant, similar case (and in a higher amount) be an abuse of discretion (greatly disproportionate) in May of 1987?
Cases from other circuits are in accord with the Burgess case and the above discussed jurisprudence from this circuit. In Price v. Louisiana Farm Bureau Mutual Insurance Company, 457 So.2d 722 (La. App. 2nd Cir.1984), writs denied, 462 So.2d 205 and 206 (La.1985), the father of five children was killed in a truck-tractor collision. The trial court awarded each child $8,000 for wrongful death damages. The children appealed, and the court of appeal increased the award with the following rationale:
The decedent and his wife had lived together continuously since their marriage in 1964. The marriage produced five children. The family members testified that they enjoyed a close, loving relationship with the decedent. There was no evidence to dispute the fact that the decedent was a good father and husband who spent much of his free time with the family.
Based on the record evidence, we find that the award of $50,000 by the trial court to the widow was appropriate, but that the trial court's award of $8,000 to each of the five children should be increased to $25,000 each as the lowest reasonable amount for loss of love and affection.
[Price, 457 So.2d at 729.]
[Bolding added.]
See, also, Brock v. New Orleans Public Service, Inc., 433 So.2d 1083 (La.App. 4th Cir.), writs denied, 437 So.2d 1147 and 1148 (La.1983); Cupit v. Grant, 425 So.2d 847 (La.App. 3rd Cir.1982).
The majority holds that $45,000 is the lowest award that would have been within the discretion of the trial court under the facts of this case. However, the majority opinion has failed to articulate the reasons why the instant case is so radically different from the mass of similar cases which fix the minimum award at $25,000 to $30,000. The majority opinion fails to consider similar awards in determining whether the trial court abused its discretion or in determining what is the lowest reasonable award. The majority opinion fails to show how the trial court's awards are greatly disproportionate to past awards in similar cases. Rather, the majority's awards, themselves, are greatly disproportionate to past awards in the mass of similar cases. No justification has been shown in law or fact for such a variance in this case. The facts of this case do not reveal that the trial court judge abused his much discretion.
I respectfully dissent.
NOTES
[1] The trial court signed four individual judgments on May 22, 1987, awarding damages as follows:

(1) Louis Vester Archie $73,750.00
(2) Versie Archie Henry $31,750.00
(3) Bennie Louis Archie $33,750.00
(4) Leatha Archie Fields $31,750.00

[2] In his written reasons for judgment, the trial court stated, in pertinent part:

Although the record shows that Mr. Archie was a dutiful husband and had a normal relationship with his wife, the court does not find the relationship a particularly close one. Moreover, Mr. Archie did not make the trip to Shreveport, even though his wife was in a serious medical condition.
[3] In the "Clarification of Written Reasons," the trial judge clarified the previous misstatement as follows:

Moreover, Mr. Archie did not make a second trip to Shreveport to gain release of his wife from the hospital and to accompany her home, even though she was in a serious medical condition.
[4] In brief, plaintiffs do not question the adequacy of the trial court judgment awarding plaintiffs $15,000.00 for survival action damages. Therefore, our review of the quantum award is limited solely to the damages for wrongful death.
[5] See Footnote 4.
[1] The mass of similar cases are found in 19 West's Louisiana Digest 2d Death §§ 95, 97 and 98 (1987).