HIGHTOWER, Judge.
The Red River Parish Police Jury and its individual members appeal a trial court judgment declaring that the Hickory Grove Community Center (“Center”) is not a public building and, also, ordering that governing authority to reestablish the local fire station as the polling place for the precinct in question. We affirm.

Background

In 1938, a resident of Red River Parish conveyed to two other individuals, as trustees for the Hickory Grove Community Club, a one-quarter acre tract located in a rural area of the parish known as Hickory Grove. Improvements on the property included a small building, the “Community Center.” Beginning in the early 1940’s, this structure served as the local voting site. However, in October 1989, a recently-erected fire station became the polling place. Subsequently, on February 25, 1992, the police jury voted to move the elections facility back to the Center.
Contesting this latter relocation as illegal, Emmett Womack, the Clerk of Court for Red River Parish[1], instituted an action against the police jury and its individual members. Relying on LSA-R.S. 18:533, Womack maintained that the polling place for Hickory Grove should be located in a public building; that the Center does not meet this criterion; and, that the police jury should rename the fire station, the only publicly owned building within the precinct, as the voting site. After trial, the district court agreed and accordingly granted mandamus against the governing body. This appeal ensued.

Discussion

LSA-R.S. 18:533, vesting police juries with limited discretion to determine the location of one polling place for each precinct within the parish, pertinently provides:
B. Location. (1) Except as otherwise provided in this Subsection, the polling place for a precinct shall be located in the precinct in a suitable public building and all public bodies are hereby required to allow the use of public buildings as voting precincts without cost or charge when the parish governing authority re *1215 quires it. If no public building is available, then a precinct may be located on private property. The parish governing authority shall inform the commissioner of elections as to whether the parish polling places are located in public buildings or on private property.
The present parties agree that any public building within the Hickory Grove precinct may be chosen as the polling place. Thus, the sole issue to be considered is whether the Center is a “public building” within the intendment of the statute.
LSA-R.S. Title 18, the election code, contains no definition of “public building.” Although in interpreting this designation we ultimately must consider the reasoning behind LSA-R.S. 18:533, our supreme court has approved the following statement in reference to the term:
Public Building. In a narrow sense a “public building” is a building erected and owned by the state, county or municipal authorities; a building owned or controlled and held by the public authorities for public use; a building belonging to, or used by, the public for the transaction of public or quasi-public business. As so defined the term “public building” includes a high school building, a hospital, a jail, a town calaboose, or a common schoolhouse.
In a broader sense it is defined as a building, which, although privately owned, may be fairly deemed to promote a public purpose or to subserve a public use; a building where the public congregates in considerable numbers either for amusement or for other purposes. As so defined the term “public building” includes a camp meeting building.
As used in statutes. There is no hard and fast rule with respect to what may be included within the term “public building” and where the term is unaccompanied by words of explanation or limitation, whether it includes a particular building depends upon the general scheme or object of the statute.
Sharp v. Police Jury of Parish of East Baton Rouge, 194 La. 220, 193 So. 594, 596 (1940) (quoting from 50 Corpus Juris, page 850).
Appellants suggest that the requirement of holding elections in public buildings is designed merely to ensure access for all persons to the polling place. We disagree. The election code adequately addresses this matter by other means in providing that voters may in no manner be obstructed, hindered, or delayed from any facility where an election is to be held. See LSA-R.S. 18:1461A(9).
Our examination of the election code leads us to conclude that, in enacting LSA-R.S. 18:533B(1), the legislature sought to use public buildings for one of their designed purposes, i.e., the housing of public functions, such as elections. Further, so utilizing public buildings avoids unnecessary governmental interference with private property, and the attendant expenditures from the public fisc. Indeed, in this connection, LSA-R.S. 18:533 sets forth a rental fee of up to $100 to be paid owners for each election conducted on their private property, but requires a written, recorded lease. Therefore, the general scheme of this statute suggests adopting the more narrow definition mentioned by the supreme court in Sharp, supra.
Title to the building and property at issue in this case last transferred in December 1938. At that time, ownership vested in Boyd Longino and Allen Upshaw, trustees for . the Hickory Grove Community Club. The Center, located thereon, had been built by using lumber from an old Presbyterian church and community contributions. Concerning use of the facility, the deed to Longino and Upshaw contained the following language: “It is understood and agreed that this property shall be used as a community center, for public non religious meetings, and is not to be used for preaching services, nor as a residence by any individual or individuals nor for any other private purpose[.]”
Many of the witnesses presented their recall of how the Center had been utilized over time. Other than its periodic service as the local polling place, the most consistent use of the structure came from a *1216 women’s group known as the Hickory Grove Community Club.[2] Indeed, during the existence of this organization, the police jury, presumably through the state's commissioner of elections, paid the group $50 per election for use of the building. The Community Club conducted meetings on the property from the 1960’s until the mid-1980’s, when the association disbanded. Their activities included charitable as well as social functions, e.g., planning outings; making quilts and other crafts; sending flowers, food and greeting cards to the ill or grieving.
The former secretary of this Community Club, Winona Longino, testified that she believed that the women’s organization had authority to determine who used the building. However, in furtherance of its purpose as a community house, they did not decline any requests. For example, on numerous occasions, the group permitted a Brownie troop to meet there. All witnesses agreed that the structure had never served as a private residence or a commercial business.
After consulting with an attorney in the early 1970’s, the police jury decided to treat the Center as a public building. For a time, in fact, the parish governing body expended funds for repairs and maintenance at the location. One police juror, however, recalled these improvements being made in lieu of paying election rentals to the women’s club. Additionally, residents of the Hickory Grove area funded a 1992 restoration project. In recent correspondence with the state department of elections, appellants included the facility in a list of public buildings. Furthermore, as reflected by a defense exhibit, the property is exempt from ad valorem taxes in that it is owned by a nonprofit corporation or association for charitable or fraternal purposes.
Considering the totality of the evidence, we find ample support for the trial court’s conclusion that the Center is not a public building. Clearly the facility is not owned by the state, parish, or municipal authorities. Aside from occasionally serving as a polling place, the structure is not a site where public business is transacted. Nor are we convinced that governmental management will suffice to convert a privately owned facility into a public building. Besides, here, the only time that the police jury exercises any control over the Center, and that being limited, is at election time. Indeed, even the sporadic maintenance of the building has been either funded by local residents or seemingly performed in exchange for election rentals. Therefore, the Center is not a public building as contemplated within the election code.
In addition to declaring that the structure in question is not a “public building,” the trial court issued a writ of mandamus ordering the police jury to move the polling place back to the local fire station. Of course, it is well settled that a writ of mandamus does not lie to compel performance of discretionary acts. Terral Barge Line, Inc. v. Port Commission, 577 So.2d 787 (La.App.2d Cir.1991). However, in the instant case, upon elimination of the Center from consideration, there exists only one public building within the Hickory Grove precinct. Clearly, the fire station is suitable to house elections, and, in fact, served that function in the past. Thus, in that the police jury has but one choice for the location involved, the trial court did not err in its issuance of mandamus.
Finally, appellee argues that the issues of this case are so elementary that appellants should be cast with damages for instituting a frivolous appeal. Yet he has neither answered the appeal nor otherwise properly brought the issue before us. See LSA-C.C.P. Art. 2133; Dixon v. Mid-South Rail Corp., 580 So.2d 438 (La.App.2d Cir.1991), writ denied, 584 So.2d 1160 (La.1991). We therefore do not consider the complaint.

Conclusion

Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. *1217 Costs are assessed to appellants, limited to those applicable by law.
AFFIRMED.

. Womack filed this suit in his capacity as Ex-Officio Parish Custodian of Voting Machines and Chief Elections Officer of Red River Parish.

. From the record, there appears to be no correlation between this women’s organization and the original association to which the land had been deeded.