Dear Mr. Hall:
You requested an opinion from this office as to whether St. Tammany Parish ("the Parish") has the authority to require the Northshore Harbor Center District ("NHCD") to allow use of the Northshore Harbor Center ("Harbor Center") as a polling place to replace Salmen High School, when such use may preclude the NHCD from holding an event on the date of the scheduled election.
Your letter states that before Hurricane Katrina, Salmen High School was the designated polling place for voters in Precincts 909, 910 and 911. Due to extensive hurricane related damage, Salmen High School was no longer an appropriate polling place, and the Harbor Center, which opened in June 2005, offered its facility to be used as a temporary polling place in the May 2006 election. After repairs were made to Salmen High School the Parish relocated the polling place back to Salmen High School, which is located in precinct S17 and serves as a polling place for not only Precincts 909, 910 and 911 but also other precincts (S15 and S17). After the return to Salmen High School, the Parish received complaints from citizens who had previously voted at Salmen High School but who lived closer to the Harbor Center.
Your letter cites La.R.S. 18:533(B)(1) as mandating that polling places be located in the designated precinct. However, La.R.S. 18:533(A)(2) provides that "[t]he parish governing authority shall, to the extent possible, locate multiple precincts in a polling location, if it determines after due consideration that to locate multiple polling places within the same polling location would be efficient, cost-effective and convenient to voters." (Emphasis added.) This indicates that it is not mandatory for there to be a *Page 2 
polling place in every precinct. In fact, the statute is to the contrary by mandating the parish, to the extent possible, locate multiple precincts in one polling location as long as in doing so the one polling place is efficient, cost-effective and convenient to voters.
In addition, La.R.S. 18:533(B)(1) of the Election Code provides for the location of polling places and states, "the polling place for a precinct shall be located in the precinct in a suitable public building
and all public bodies are hereby required to allow the use of publicbuildings as voting precincts without cost or charge when the parishgoverning authority requires it." (Emphasis added.) The police jury is the proper authority for determining the polling place. See Atty. Gen. Op. 92-435 and 84-911.
This statute provides for the polling place to be located in a suitable public building, and when the parish authority requires it, public bodies must allow the use of public buildings without cost or charge. Changing the polling place for precincts 909, 910, 911, S15 and S17 from Salmen High School to the Harbor Center turns upon whether the police jury deems the Harbor Center a public building and, if so, whether the Harbor Center is more suitable for use as a polling place than is Salmen High School.
Public Building
The election code contains no provision defining public buildings. A definition is addressed in Womack v Red River Parish Police Jury:[1]
 In a narrow sense a "public building" is a building erected and owned by the state, county or municipal authorities; a building owned or controlled and held by the public authorities for public use; a building belonging to, or used by, the public for the transaction of public or quasi-public business. [ . . .] In a broader sense it is defined as a building, which, although privately owned, may be fairly deemed to promote a public purpose or to subserve a public use; a building where the public congregates in considerable numbers either for amusement or for other purposes. 622 So.2d 1213, 1215 (La.App. 2d Cir. 1993) (quoting Sharp v Police Jury of Parish of East Baton Rouge, 194 La. 220, 193 So. 594, 596 (1940)).
The NHCD is created by La.R.S. 33:4575, explicitly designated as a political subdivision of the state,[2] and title to immovable property acquired by the board shall reside with the NHCD.[3] The Harbor Center is owned and maintained by NHCD, a political subdivision of the state. The powers and duties of the NHCD include operating the Harbor Center as an events center and collecting rates, charges and rentals for use of the building. See La.R.S. 33:4575.3(2) and (5). The Harbor Center promotes a public purpose to the extent that the NHCD is authorized "to establish and maintain facilities for the physical and cultural benefit of the community." La.R.S. 33:4575.3(18). *Page 3 
Part of maintaining facilities for the community's benefit is collecting revenue from use of the facilities. Based on the foregoing the Harbor Center is a public building which is owned and operated by the NHCD and who is charged with the duty to maintain the facility for the physical and cultural benefit of the community and, to the extent possible, operate with self-generated funds received from the use of the facility.
Suitability
The determination that the Harbor Center is a public building is not dispositive of the inquiry as to whether the Harbor Center facility is a legally acceptable polling place. The Police Jury must also find the Harbor Center suitable for use as a polling place. In making such a determination the Police Jury has a duty to "exercise reasonable care in establishing a polling place [ . . .] in a building which affords each qualified voter an opportunity to exercise his right of voting and access with reasonable safety and convenience." Burgess v City ofShreveport, 471 So.2d 690, 693 (La. 1985). See also La.R.S. 18:533(A).
Your letter clearly indicates that there may be a conflict with using the Harbor Center as a polling place due to scheduled events at the Harbor Center.[4] These events may affect the suitability of the Harbor Center serving as a polling place. The Harbor Center allows for advanced booking for conventions, meetings and events, which may involve the sale of alcohol and could bring a significant number of people to the Harbor Center.
There are no statutory guidelines which define suitability. In the past, the Attorney General has addressed the suitability of a polling place where other events are held. See Atty. Gen. Op. 86-251 and 92-286. Citing factors such as "traffic congestion, insufficient parking, and loitering which would interfere with voters' access to the polls," the Attorney General voiced serious concerns as to the appropriateness of designating a particular location as a polling place when that location was holding a festival. Atty. Gen. Op. 86-251. The opinion later states that "[i]f the building is a public building, the governing authority should take steps to assure that the festival dates do not conflict with election dates or move the polling place to a more suitable location in accordance with R.S. 18:534." Id.
La.R.S. 18:1462 prohibits certain activity at polling places, including loitering,[5] possessing alcoholic beverages,[6] and appearing at a polling place in an intoxicated condition.[7] In a previous opinion, the Attorney General stated that in determining suitability of a polling place which dispensed alcoholic beverages, "the real issue is whether the beer will interfere with the orderly conduct of the poll." Atty. Gen. Op. 80-515. *Page 4 
Although both the Parish and the Harbor Center are willing to work together so that the Harbor Center may hold events during an election day, this may not be a feasible solution to provide a suitable polling place for the people in those precincts because of the prohibitions in La.R.S. 18:1462.
Allowing the Harbor Center to operate while another portion of the building is used for a polling place raises concerns with suitability. Closing the Harbor Center during an election is inconsistent with the statutes which created the NHCD, where it was granted the authority to operate and maintain an events center, and receive revenue from use of the events center. As previously mentioned, La.R.S. 18:533(B)(1) requires use of a public building as a polling place without cost or charge when the parish governing authority requires it. This directly conflicts with the NHCD's statutorily granted authority to collect rates, charges and rentals for use of the facility. See. La.R.S.33:4575.3(5).
To be suitable, the Harbor Center must be capable of providing each qualified voter with an opportunity to exercise his/her right to vote with reasonably safe access and convenience. Your letter mentions that the Harbor Center is located within precinct 909, therefore the polling place might be physically closer to some voters than Salmen High School, but convenience is not limited to physical distance. It is possible for one location to be physically closer to some voters than another, but unsuitable as a polling place because it is not accessible or convenient.
The police jury should take into account the potential conflicts presented by use of the Harbor Center and determine whether these conflicts render the Harbor Center unsuitable for use as a polling place. When the NHCD originally offered the Harbor Center as a temporary polling place after Hurricane Katrina the Harbor Center had cancelled all revenue related events and activities such that there was no conflict with allowing voting to take place at the facility. This situation has now completely changed as events and activities are not being held at the Harbor Center and which would be in direct conflict with allowing the facility to be used as a polling place.
Additional Considerations
Changing an established polling place may only occur by a vote of the parish governing authority, pursuant to La.R.S. 18:534(A). It should also be noted that:
 Any change in the location of a polling place must comply with the preclearance requirements of the 1965 Voting Rights Act. Specifically, any change which affects voting must, before it becomes effective, be submitted for preclearance to either the United States Attorney General in Washington or to the United States District Court for the District of Columbia. Atty. Gen. Op. 84-548.
Additionally, in the event the Harbor Center is determined to be available for use as a polling place, the parish governing authority must comply with the notice and publication *Page 5 
requirements of La.R.S. 18:535 and 18:536. The police jury must also adhere to the time restrictions on changing a polling place established by La.R.S. 18:534(B), which provides that a polling place cannot be changed during the period commencing when the qualifying time opens and ending on the date of the general election.
In Atty. Gen. Op. 92-286, our office was of the opinion that:
 [T]he Parish Board of Election Supervisors must act to ensure that the polling places are properly established and maintained in strict compliance with the Election Code so that voting is conducted in an orderly fashion free from unnecessary disturbance. The parish governing authority may change the location of polling places if necessary to maintain compliance but preferably only after all other options have been exhausted.
It is noted in your letter that voters from precincts 909, 910 and 911 have resumed use of Salmen High School as a polling place since Hurricane Katrina. There are no facts provided to indicate that it is necessary to change the polling place back to the Harbor Center in order to maintain compliance with the Election Code.
We hope that this opinion has adequately addressed the legal issues that you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 With best regards,
 JAMES D. "BUDDY" CALDWELL Attorney General
 By: __________________________ WILLIAM P.BRYAN, III Assistant Attorney General
 JDC/WPB, III/ard
[1] Womack v. Red River, 622 So. 2d 1213, La. App. 2 Cir. 1993.
[2] La.R.S. 33:4572.2
[3] La.R.S. 33:4575.3(7)
[4] For example, on October 20th, the date of the Gubernatorial Primary, the Harbor Center's events calendar indicates that a car show is scheduled.
[5] It is unlawful for anyone to remain six hundred feet from the entrance of a polling place, except when exercising the right to vote. La.R.S. 18:1462(A)(2).
[6] See La.R.S. 18:1462(D)(1) and La.R.S. 18:533(C).
[7] See La.R.S. 18:1462(D)(2).